UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BOOTHEEL ETHANOL INVESTMENTS, L.L.C., ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Case No. 1:08CV59SNLJ |
| SEMO ETHANOL COOPERATIVE, ET. AL., ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM

Plaintiff has filed this multicount contract and tort action against defendant in connection with certain financial transactions concerning their limited liability company, Bootheel Ethanol, L.L.C. This matter is before the Court on the defendants' motion to dismiss (#8), filed January 29, 2008. Responsive pleadings have been filed and the matter is now ripe for disposition.

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, 244 F.3d. 623, 627 (8th Cir. 2001) *quoting* Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). A complaint must be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007)(abrogating the prior "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id., 127 U.S. at 1974. A complaint must set forth factual

allegations which are enough to "raise a right to relief above the speculative level." Id., 127 U.S. at 1974.

In passing on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232 (1974); Kottschade v. City of Rochester, 319 F.3d. 1038, 1040 (8th Cir. 2003). While a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1265 (internal citations omitted). "Although the pleading standard is liberal, the plaintiff must allege facts – not mere legal conclusions – that, if true, would support the existence of the claimed torts." Moses.com Securities v. Comprehensive Software Systems, Inc., 406 F.3d. 1052, 1062 (8th Cir. 2005) *citing* Schaller Tel. Co. v. Golden Sky Systems, 298 F.3d. 736, 740 (8th Cir. 2002). In viewing the complaint in the light most favorable to the plaintiff, the court should not dismiss it merely because the court doubts that the plaintiff will be able to prove all of the necessary allegations. Bennett v. Berg, 685 F.2d. 1053, 1058 (8th Cir. 1982). The primary issue for a court to consider is not whether the plaintiff will ultimately prevail in the lawsuit, but whether the complaint adequately states a claim; and therefore, the plaintiff is entitled to present evidence in support of that claim. A complaint may not be dismissed based upon a district court's assessment that the plaintiff will fail to present evidentiary support for the complaint's allegations or will ultimately fail to prove one or more claims to the satisfaction of the factfinder. Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1969, n.8; Neitzke v. Williams, 490 U.S. at 327 ("What Rule 12(b)(6) does not countenance are dismissals based upon a judge's disbelief of a complaint's

factual allegations."). With this plausibility standard in mind, this Court turns to an examination of the plaintiff's complaint.

The plaintiff and defendant are the two sole members of Bootheel Ethanol, L.L.C., a limited liability company created under the laws of Missouri. During the relevant time-period, plaintiff Bootheel Ethanol Investments (hereinafter referred to as "BEI") was the minority member of Bootheel Ethanol, L.L.C. (hereinafter referred to as "Bootheel LLC") and defendant SEMO Ethanol Cooperative (hereinafter referred to as "SEMO") was the majority member[1]. The parties "formed Bootheel to build and operate an ethanol-manufacturing facility in Malden, Missouri." Plaintiff's complaint, ¶12. They entered into an Operating Agreement[2] which provides that it and Bootheel LLC "shall be governed by the laws of the State of Missouri." Exhibit A, §15.3.

Under the Operating Agreement, the parties agreed to make initial capital contributions as follows: BEI - $3,866,000.00 and SEMO - $4,023,900.00. Both parties made their respective capital contributions as agreed upon. Subsequently, Bootheel LLC required additional funding. Pursuant to the Operating Agreement, members are authorized to loan money to Bootheel LLC. Exhibit A, §6.2 (3). BEI made loans to Bootheel LLC totaling $1,276,000.00. Pursuant to the Operating Agreement, "all such loans (I) shall be payable only from the assets of the Company without any recourse against or any right of contribution from any Member". Exhibit A,

---

[1]The other defendants are the members of defendant SEMO's board of directors: Quincy Murphy, Mike Mills, John Story, Marty Hutcheson, and Dale Mayberry. They will be hereinafter be collectively referred to as the "individual defendants".

[2]The latest amendment and restatement of the Operating Agreement is attached to the complaint as Exhibit A.

§6.2(3)(I). Furthermore, under the Operating Agreement, "[N]o member may withdraw his capital contribution or any part thereof without the consent of all of the Members." Exhibit A, §6.4.

BEI alleges that in September 2006, without BEI's consent, SEMO, by and through the individual defendants, withdrew its entire capital contribution ($4,032,900.00) from its capital account at the First National Bank of Malden.[3]

Plaintiff alleges claims of breach of contract against defendant SEMO (Count I), breach of fiduciary duty against defendant SEMO (Count II), civil conspiracy against defendant SEMO and the individual defendants (Count III), and tortious interference with a contract against the individual defendants (Count IV). Defendants contend that plaintiff lacks standing under both federal and state substantive law governing limit liability companies to bring this action. Furthermore, defendants assert that any alleged breach of contract claim and breach of fiduciary claim lies with Bootheel LLC, as the alleged injured party, not with BEI. Finally, defendants assert that the plaintiff has failed to make even a minimal factual showing supporting the claims for alleged civil conspiracy and tortious interference with a contract.

In this diversity lawsuit, the Court applies the substantive law of the state in which the district court sits. Urban Hotel Dev. Co. v. President Dev. Co., L.C., 535 F.3d. 874, 877 (8th Cir. 2008); Roemmich v. Eagle Eye Dev. L.L.C., 526 F.3d. 343, 348 (8th Cir. 2008). In the present case, Missouri substantive law applies.

Under Missouri law, a limited liability company is governed by statute and the required operating agreement. Urban Hotel Dev. Co., at 878 *citing* In re Tri-River Trading, L.L.C., 329 B.R. 252, 267 (8th Cir. B.A.P. 2005); §§347.010 *et. seq*. Operating agreements "are to be

---

[3]According to the Operating Agreement, each Member established and maintained a separate capital account. Exhibit A, §6.4.

interpreted by ascertaining the intent of the parties and giving effect to it." Urban Hotel Dev. Co., at 878 *citing* Am. Anglian Envtl. Techs., L.P. v. Envtl. Mgmt. Corp., 412 F.3d. 956, 958 (8th Cir. 2005). Furthermore, a district court "enforces a clear and unambiguous operating agreement, giving maximum effect to Missouri's policy of freedom of contract and the enforceablity of operating agreements." Urban Hotel Dev. Co., at 878 *citing* Am. Anglian Envtl Techs, at 958, 962. As a member of Bootheel, LLC, plaintiff has standing to enforce the Operating Agreement, as long as said Agreement and Missouri law clearly provides it with a cause of action. After careful consideration of the matter, the Court determines that plaintiff does not state a cause of action either under the Operating Agreement or under Missouri law.

## **Breach of Contract (Count I)**

Plaintiff BEI asserts that defendant SEMO breached the Operating Agreement by withdrawing its capital funds contribution of $4,032,000 without plaintiff's consent. Plaintiff further alleges that it has been damaged by this withdrawal because in making the loan of $1,276,000 to Bootheel, it relied upon SEMO's capital contribution as a "source of funds for Bootheel's ability to repay the loans." Plaintiff then claims that by withdrawing these funds, Bootheel is unable to repay the loan. Thus plaintiff's prayer for relief is the amount of the loan proceeds, plus interest.

SEMO does not deny that the Agreement prohibited both parties from withdrawing their capital contributions without permission from the other party and that a withdrawal would be a breach of the agreement. SEMO contends, however, that "plaintiff lacks standing to bring [this claim] directly against defendants inasmuch as said [claim] properly belong[s] to Bootheel LLC, not plaintiff BEI. As SEMO explains, "even assuming [the allegation of breach] is true, any

5

obligation with respect to the capital contribution was owed directly to Bootheel LLC and not to Plaintiff BEI." To be sure, under Missouri law,

> An individual shareholder does not have standing to maintain a personal action for recovery of corporate funds. Corporate shareholders cannot maintain personal actions for recovery of improperly diverted or appropriated funds or property of the corporation. Any injury is to the corporation, not to individual shareholders; suit must be brought derivatively. W.D. Bruner v. Workman Oil Co., 78S.W.3d 801, 804 (Mo. App. 2002), citing 21 West, Inc. v. Meadowgreen Trails, Inc., 913 S.W.2d 858 (Mo. App. 1995).

But SEMO mischaracterizes BEI's claim. BEI expressly disavows that it is making a claim for recovery of corporate funds -- the $4,032,000 that defendants withdrew -- and does not purport to act on behalf of the corporation or its shareholders. Instead, BEI's claim is simply that SEMO breached the Operating Agreement. Missouri law expressly provides that suits to enforce operating agreements are enforceable by any member of an L.L.C., Section 347.081.2 R.S.Mo. 2006, but there are special superceding rules for the enforcement of operating agreements as they pertain to capital contribution. In particular, Section 347.099.3 states: "A member's obligation [under the operating agreement] to make a contribution shall not be enforceable by. . .any other member unless the member so obligated to make such contribution has specifically agreed or consented to such enforcement. . . ." Because the operating agreement in this case does not contain a specific agreement that would allow one member to enforce another member's obligation to make a contribution, and there is no other agreement or enforcement mechanism that would allow it, the statute operates to preclude a claim for enforcement of that part of the agreement.

In an apparent attempt to avoid the effect of Section 347.099.3, and although the claim is based on SEMO's breach of the operating agreement by failing to make its capital contribution, Plaintiff BEI does not seek the corresponding remedy for enforcement of the claim, which is payment of the capital contribution. Instead, Plaintiff seeks damages for a collateral consequence -- the alleged inability of Bootheel, L.L.C. to repay the Plaintiff's loan. By Plaintiff's own allegations, though, these damages flow directly from SEMO's failure to make its capital contribution and because the statute precludes enforcement of SEMO's obligation to make its capital contribution, it follows that a claim for damages resulting therefrom is likewise precluded.

Arguably, however, sec. 347.099.3 does not even apply to this situation insofar as plaintiff's claim does not seek "enforcement" of that part of the operating agreement requiring SEMO to pay its capital contribution. "Enforcement," in one sense, means enforcement by utilizing a remedy that requires the member to make his capital payment, in which case, as noted, the statutory prohibition applies. But "enforcement," in another sense, can be to bring a claim to "enforce" the operating agreement through remedies other than the payment of the capital contribution, in which case the statutory prohibition does not apply. Although the statute is not altogether clear in its use of the term, "enforcement," it matters not in this case. Even if the statute is construed to allow claims to enforce the operating agreement through remedies other than the payment of the capital contribution, the claim here still fails. The specific remedy sought by SEMO -- damages for failure to repay SEMO's $1,276,000 loan -- is not ripe. The loan has not become due for payment., and indeed, according to the operating agreement, any loan to Bootheel LLC will not be payable unless and until Bootheel is terminated as a company. In the absence of a valid claim for damages, there is no cause of action.

For the foregoing reason, Count I is dismissed with prejudice for failure to state a cause of action.

### **Breach of Fiduciary Duty (Count II)**

Next, plaintiff BEI alleges that defendants' alleged misconduct was a breach of fiduciary duty to plaintiff. Plaintiff contends that based solely on defendant SEMO's status as a majority shareholder, SEMO had a fiduciary duty to BEI which it breached when it withdrew its capital contribution to Bootheel LLC. Plaintiff contends that this nonspecific fiduciary duty required SEMO to "always act for the benefit of the minority member, Plaintiff." Complaint, ¶35. Plaintiff fails to point to any provision within the Operating Agreement which imposes any particular fiduciary duty on SEMO as a majority member or imposes a fiduciary duty on SEMO (as a majority member) to act as a guarantor for any funds BEI may voluntarily loan to Bootheel LLC.

Even if SEMO, as a majority shareholder, owed a duty of good faith and fair dealing to BEI, as a minority shareholder, *see*, Brazil v. Rickerson, 268 F.Supp.2d. 1091, 1096-97 (W.D.Mo. 2003), such a duty is only grounded in SEMO's status as a member of Bootheel LLC. Both Missouri limited liability law and the Operating Agreement provide that a member is not liable to another member, "solely by reason of acting in his capacity as a member." §347.088.4 R.S.Mo.; *see also,* §347.057 R.S.Mo.; Tri-River Trading Co. L.L.C., 329 B.R. at 268. Furthermore, assuming that the duty of care owed to Bootheel, LLC and, through the corporation, to all shareholders; i.e. BEI was violated, such violation impacted both Bootheel LLC and BEI. As to Bootheel LLC, the harm is presumably its inability to repay a corporate debt, such harm being remedied only through a shareholder's derivative suit. As to BEI, its harm is presumably loss of monies due to Bootheel LLC's alleged inability to repay it loan debt to BEI. In some cases this type of harm can be the individual type required for the direct injury exception

to a shareholder's derivative suit. *See*, Gray v. Bicknell, 86 F.3d. 1472, 1489 (8th Cir. 1996). However, in this case, there is no link between the breach of fiduciary duty and BEI's claimed individual harm. This is because plaintiff's claim is contractual in nature - its harm arises from a loan arrangement made pursuant to the Operating Agreement. Whatever duty SEMO had to Bootheel LLC and/or BEI is not extended to "outsiders" who are tied to the limited liability company through a contractual relationship. "When a person wears two hats so that he is both a shareholder and an outsider interested in corporate decisions, the fiduciary duty exists only with respect to shareholders qua shareholders. The fiduciary duty does not extend to the shareholder when he is acting in the role of an outsider." Gray v. Bicknell, at 1489. Thus, with respect to its claim that the loan debt will not be repaid due to SEMO's conduct, such claim is asserted by BEI as a corporate outsider. Therefore, SEMO owed BEI no fiduciary duties with respect to this alleged non-payment of the corporate debt. *See*, Gray v. Bicknell, at 1489.[4]

### Civil Conspiracy (Count III)

In Count III, BEI alleges that "[A]ll defendants combined, conspired and agreed with each other to breach the contract between Plaintiff and SEMO and to breach SEMO's fiduciary duty to Plaintiff as set forth hereinabove." Complaint, ¶40. BEI further asserts that the "Individual Defendants are liable for conspiracy with SEMO because the Individual Defendants and SEMO acted for their own personal benefit and not for the benefit of Bootheel." Complaint, ¶42. BEI

---

[4]A Missouri Court of Appeals has reviewed a similar claim; i.e., majority shareholder's wrongful transfer of corporate assets to itself resulting in diminished value of plaintiff minority shareholders' shares, and found that such a claim was in actuality a derivative shareholders' suit. Peterson v. Kennedy, 791 S.W.2d. 459, 464-65 (Mo.App. 1990). However, assuming that the minority shareholders' claim is one for loss of proportionate share of money alleged to have been transferred, then the state court opined that " . . . if this pleads any claim, it simply pleads an interference with plaintiffs' contract or business expectancy." Peterson v. Kennedy, at 464. For reasons to be set forth, the instant complaint fails to plead such a claim.

further alleges that the "Individual Defendants and SEMO together carried out the illegal and improper plan to withdraw all of SEMO's $4,032,900 investment in Bootheel in violation of Bootheel's Operating Agreement and Bootheel's fiduciary obligations to Plaintiff." Complaint, ¶43.

A "civil conspiracy" is an agreement or understanding between persons to do an unlawful act, or to use unlawful means to do a lawful act." Oak Bluff Partners, Inc. v. Meyer, 3 S.W.3d. 777, 780-91 (Mo.1999); Gibson v. Brewer, 952 S.W.2d. 239, 245 (Mo. 1997); Ritterbusch v. Holt, 789 S.W.2d. 491, 494 (Mo. 1990); Phelps v. Bross, 73 S.W.3d. 651, 657 (Mo.App. 2002); Creative Walking, Inc. v. American States Ins. Co., 25 S.W.3d. 682, 688 (Mo.App. 2000). To state a claim for civil conspiracy, a plaintiff must establish: 1) two or more persons; 2) with an unlawful objective; 3) after a meeting of the minds; 4) committed at least one act in furtherance of the conspiracy; and 5) the plaintiff was thereby damaged. Moses.com Securities, Inc. v. Comprehensive Software Systems, Inc., 406 F.3d. 1052, 1063 (8th Cir. 2005); Paglin v. Saztec Int'l, Inc., 834 F.Supp. 1184, 1195 (W.D.Mo. 1993); Oak Bluff Partners, at 781; Gibson, at 245; Rice v. Hodapp, 919 S.W.2d. 240, 245 (Mo. 1996); Mika v. Central Bank of Kansas City, 112 S.W.3d. 82, 93 (Mo.App. 2003); Phelps, at 657; Creative Walking, at 688.

The usual liberal requirements of notice pleading are not applicable when conspiracy claims are raised. "A mere allegation of a conspiracy without specific facts demonstrating a `meeting of the minds' among the conspirators fails to state a claim upon which relief can be granted." Carhart v. Smith, 178 F.Supp.2d. 1068, 1075 (D.Neb. 2001) *citing* Snelling v. Westhoff, 972 F.2d. 199, 200 (8th Cir. 1992). Furthermore, in Missouri, if tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well. Oak Bluff Partners, at 781; Rice v. Hodapp, at 245.

In the present case, BEI has failed to plead specific facts demonstrating a meeting of the minds of the defendants in support of its conclusionary allegation that they conspired to carry out together "the illegal and improper plan to withdraw all of SEMO's $4,032,900 investment in Bootheel". BEI fails to specify the "acts" taken by the defendants in furtherance of this conspiracy; i.e. fails to specifically describe the alleged actions taken by each of the Individual Defendants in further in conspiring to create and carry out the "illegal and improper plan" to withdraw SEMO's investment in Bootheel LLC. In fact, plaintiff concedes the pleading inadequacy of Count III by admitting that "Plaintiff does not know yet which Defendant did what." Plaintiff's Memorandum in Opposition (#17), pg. 9.

Furthermore, as previously noted, if the tortious acts alleged as an element of the civil conspiracy fail to state a cause of action, then the claim of civil conspiracy must fail. Because this Court has determined that plaintiff BEI's claims for breach of contract and for breach of fiduciary duty must be dismissed, then its claim for civil conspiracy must be dismissed as well.

### Tortious Interference with a Contract (Count IV)

Plaintiff's Count IV is against the individual defendants only. Count IV alleges that "[B]y conspiring among themselves to withdraw SEMO's capital contribution to Bootheel the Individual Defendants willfully and intentionally interfered with the Operating Agreement between Plaintiff and SEMO." The withdrawal of SEMO's capital contribution in breach of the Operating Agreement was necessarily an act of the individual defendants in their official capacity because a corporation, of course, cannot act except through its officers, directors and agents. In general, however, corporate officials acting in their official capacity cannot be liable for tortious interference with the corporation's own contracts. Paglin v. Saztec Int'l, Inc., 834 F.Supp. 1184,

1195-96 (W.D. Mo. 1993). The reason for the rule is that party to a contract cannot be said to tortiously interfere in the breach of its own contract. <u>Id.</u>

The only exceptions to the rule are where the corporate officer inducing the breach of contract "employ[s] improper means" or "act[s] out of self-interest," <u>Id.</u>, and in the absence of a sufficient allegation supporting one of these exceptions, there is no cause of action. In the context of interference with a contract, the term "improper means" is defined to "include acts which are wrongful in and of themselves, such as 'misrepresentations of fact, threats, violence, defamation, trespass, restraint of trade, or any other wrongful act recognized by statute or common law.'" <u>Id.</u> Count IV contains no such allegations.

Nor is there a sufficient allegation on the "acts out of self-interest" exception. Although Count III does allege that "[E]ach Individual Defendant had an independent personal stake in achieving the object of the conspiracy, viz., the recovery of the money each of them invested," and although that allegation was incorporated by reference in Count IV, the corporate officer's breach of a corporate contract to enable the recovery of the officer's investment in the corporation is not the kind of self-interest to which the exception refers. Tellingly, plaintiff cites no authority whatsoever in support of its argument in its Memorandum in Opposition to Motion to Dismiss, and this Court, after extended research, has found none. And it is no wonder. The gain from inducing this kind of a breach of contract is to the direct benefit of the corporation, the value of which is increased or at least preserved, and any gain to the officers and directors is realized only in the sense that the value of their ownership in the corporation is increased or preserved. After all, if indeed the officers and directors derive a personal gain -- as plaintiff's allege -- from the fact that the corporation withdrew the $4M+ from Bootheel, then it is the corporation's gain in the first instance. And if it can be said that the acts of corporate officers in

breaching a contract that results in direct benefit to the corporation are acts of the officer's self interest, and thus are acts that subject the officers to liability to third parties, then the absurd result obtains that corporate officers cannot act for the benefit of the corporation they serve!

In addition, some Missouri cases appear to go so far as to collapse the self-interest exception into the improper means analysis. These courts have held "that one who has an economic interest in a contract cannot be held liable for inducing a breach thereof even though motivated by self interest, in the absence of pleading and proof that such self-interested purpose was accomplished by improper means." Murray v. Ray, 862 S.W.2d 931, 935 (Mo. App. S.D. 1993) *quoting* Friedman v. Edwards L. Bakewell, Inc., 654 S.W.2d 367, 369 (Mo. App. E.D. 1983). As stated above, Count IV contains no allegations of any improper means by which the contract was breached. Accordingly, Count IV must be dismissed for failure to state a claim.

## Conclusion

For the foregoing reasons,

Counts I, II, III, and IV are dismissed for failure to state a claim upon which relief can be granted. The dismissals are entered without prejudice, and plaintiff is granted thirty (30) days to file an amended complaint. In the absence of an amended complaint, the dismissals shall be with prejudice.

Dated this  17th  day of February, 2009.

_____
UNITED STATES DISTRICT JUDGE