UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| **BOOTHEEL ETHANOL INVESTMENTS, L.L.C.,** | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 1:08CV59SNLJ |
| **SEMO ETHANOL COOPERATIVE, ET. AL.,** | ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM**

Plaintiff has filed this contract and tort action against defendant in connection with certain financial transactions concerning their limited liability company, Bootheel Ethanol, L.L.C. This matter is before the Court on the defendants' motion to dismiss (#33), filed April 30, 2009. Responsive pleadings have been filed and the matter is now ripe for disposition.

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d. 623, 627 (8th Cir. 2001) *quoting Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). A complaint must be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)(abrogating the prior "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Courts "do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.*, 127 U.S. at 1974. A complaint must set forth factual

allegations which are enough to "raise a right to relief above the speculative level." *Id.*, 127 U.S. at 1974.

In passing on a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232 (1974); *Kottschade v. City of Rochester*, 319 F.3d. 1038, 1040 (8th Cir. 2003). While a complaint challenged by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff must still provide the grounds for relief, and neither "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" will suffice. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1265 (internal citations omitted). "Although the pleading standard is liberal, the plaintiff must allege facts – not mere legal conclusions – that, if true, would support the existence of the claimed torts." *Moses.com Securities v. Comprehensive Software Systems, Inc.*, 406 F.3d. 1052, 1062 (8th Cir. 2005) *citing Schaller Tel. Co. v. Golden Sky Systems*, 298 F.3d. 736, 740 (8th Cir. 2002). In viewing the complaint in the light most favorable to the plaintiff, the court should not dismiss it merely because the court doubts that the plaintiff will be able to prove all of the necessary allegations. *Bennett v. Berg*, 685 F.2d. 1053, 1058 (8th Cir. 1982). The primary issue for a court to consider is not whether the plaintiff will ultimately prevail in the lawsuit, but whether the complaint adequately states a claim; and therefore, the plaintiff is entitled to present evidence in support of that claim. A complaint may not be dismissed based upon a district court's assessment that the plaintiff will fail to present evidentiary support for the complaint's allegations or will ultimately fail to prove one or more claims to the satisfaction of the factfinder. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1969, n.8; *Neitzke v. Williams*, 490 U.S. at 327 ("What Rule 12(b)(6) does not countenance are dismissals based upon a judge's disbelief of a

complaint's factual allegations."). With this plausibility standard in mind, this Court turns to an examination of the plaintiff's amended complaint.

The plaintiff and defendant were the two sole members of Bootheel Ethanol, L.L.C., a limited liability company created under the laws of Missouri. During the relevant time-period, plaintiff Bootheel Ethanol Investments (hereinafter referred to as "BEI") was the minority member of Bootheel Ethanol, L.L.C. (hereinafter referred to as "Bootheel LLC") and defendant SEMO Ethanol Cooperative (hereinafter referred to as "SEMO") was the majority member[1]. The parties formed Bootheel to build and operate an ethanol-manufacturing facility in Malden, Missouri. They entered into an Operating Agreement[2] which provides that it and Bootheel LLC "shall be governed by the laws of the State of Missouri." Exhibit A, §15.3.

Under the Operating Agreement, the parties agreed to make initial capital contributions as follows: BEI - $3,866,000.00 and SEMO - $4,023,900.00. Both parties made their respective capital contributions into escrow accounts as agreed upon in the escrow agreement. Subsequently, Bootheel LLC required additional funding. Pursuant to the Operating Agreement, members are authorized to loan money to Bootheel LLC. Exhibit A, §6.2 (3). BEI made loans to Bootheel LLC totaling $1,276,000.00. Also pursuant to sec. 6.2.3 of the Operating Agreement, "all such loans (i) shall be payable only from the assets of the Company without any recourse against or any right of contribution from any Member." Furthermore, under sec. 6.4 of the

---

[1]The other defendants are the members of defendant SEMO's board of directors: Quincy Murphy, Mike Mills, John Story, Marty Hutcheson, and Dale Mayberry. They will be hereinafter be collectively referred to as the "individual defendants".

[2]The latest amendment and restatement of the Operating Agreement is attached to the complaint as Exhibit A.

Operating Agreement, "[N]o member may withdraw his capital contribution or any part thereof without the consent of all of the Members."

BEI alleges that in September 2006, without BEI's consent, SEMO, by and through the individual defendants, withdrew its entire capital contribution ($4,032,900.00) from its capital account at the First National Bank of Malden.[3]

Defendants filed their first motion to dismiss (#8) on January 29, 2008, and this Court dismissed all counts without prejudice, granting plaintiff thirty days to file an amended complaint to remedy the defects of the first complaint. Plaintiff timely filed the amended complaint (#28) and defendants filed the second motion to dismiss (#33), to which the Court now turns.

In the amended complaint, plaintiff alleges claims of breach of contract against defendant SEMO (Count I) and fraudulent conveyance by the individual defendants (Count II). Defendants contend that plaintiff continues to lack standing—even after amending the complaint—under both federal and state substantive law governing limit liability companies to bring this action. Furthermore, defendants assert that any alleged breach of contract claim and fraudulent conveyance claim lies with Bootheel LLC, as the alleged injured party, not with BEI or the individual defendants. Plaintiff does not purport to bring a shareholder derivative suit on behalf of Bootheel LLC.

In this diversity lawsuit, the Court applies the substantive law of the state in which the district court sits. *Urban Hotel Dev. Co. v. President Dev. Co., L.C.*, 535 F.3d. 874, 877 (8th Cir. 2008); *Roemmich v. Eagle Eye Dev. L.L.C.*, 526 F.3d 343, 348 (8th Cir. 2008). In the present case, Missouri substantive law applies.

---

[3]According to the Operating Agreement, each Member established and maintained a separate capital account. Exhibit A, §6.4.

Under Missouri law, a limited liability company is governed by statute and the required operating agreement. *Urban Hotel Dev. Co.*, at 878 *citing In re Tri-River Trading, L.L.C.*, 329 B.R. 252, 267 (8th Cir. B.A.P. 2005); §§347.010 *et. seq*. Operating agreements "are to be interpreted by ascertaining the intent of the parties and giving effect to it." *Urban Hotel Dev. Co.*, at 878 *citing Am. Anglian Envtl. Techs., L.P. v. Envtl. Mgmt. Corp.*, 412 F.3d. 956, 958 (8th Cir. 2005). Furthermore, a district court "enforces a clear and unambiguous operating agreement, giving maximum effect to Missouri's policy of freedom of contract and the enforceablity of operating agreements." *Urban Hotel Dev. Co.*, at 878 *citing Am. Anglian Envtl Techs*, at 958, 962. As a member of Bootheel, LLC, plaintiff has standing to enforce the Operating Agreement, as long as said Agreement and Missouri law clearly provides it with a cause of action, and assuming it reflects the intention of the Members of Bootheel LLC.

<u>**Breach of Contract (Count I)**</u>

**A. Cause of Action For Breach Of The Escrow Agreement**

Plaintiff BEI contends that it has standing to enforce the escrow agreement (as opposed to the Operating Agreement) because it was an intended third party beneficiary. In BEI's response to the motion to dismiss, it alleges that SEMO had an obligation to both Bootheel and BEI to comply with the Operating Agreement, "making both entities creditor beneficiaries and giving [BEI] standing to enforce the escrow agreement." A third-party beneficiary, or creditor beneficiary, "is one who is not privy to a contract or its consideration but who may nonetheless maintain a cause of action for breach of the contract." *Andes v. Albano*, 853 S.W.2d 936, 942 (Mo. 1993). Although BEI alleged in the Amended Complaint that it was an intended third party beneficiary of the escrow agreement, it did not allege *breach* of the escrow agreement. Instead, BEI's sole claim in Count I is for breach of the operating agreement. In fact, only the operating

5

agreement was attached to and made a part of the complaint, not the escrow agreement. Absent any allegations of a breach of the escrow agreement in the Amended Complaint, BEI is precluded from raising such an argument in response to a motion to dismiss.

## B. Cause of Action for Breach of the Operating Agreement

### i. BEI's Standing to Sue under the Original Operating Agreement

Plaintiff BEI argues that it has standing to sue for breach of the Operating Agreement, because SEMO withdrew its capital contribution without the agreement of the other member of Bootheel LLC, in violation of sec. 6.4 of the Operating Agreement. That provision states that, "[n]o Member may withdraw his capital contribution or any part thereof without the consent of all of the Members." In the previous order, however, this Court held that BEI's right to sue under sec. 6.4 of the Operating Agreement is blocked by sec. 347.099.3, RSMo 2004, which states:

> A member's obligation to make a contribution shall not be enforceable by a third-party creditor of the limited liability company **or any other member** unless the member so obligated to make such contribution has specifically agreed or consented to such enforcement or the limited liability company has assigned such member's obligation to the creditor or creditors seeking to enforce the obligation.
> (emphasis added)

BEI now argues that its claim is not governed by sec. 347.099.3 because that statute applies only to obligations to *make* a capital contribution, not to obligations to refrain from withdrawing that contribution later. This Court disagrees. Although the statute expressly refers to the obligation to "make a contribution," the obligation not to withdraw the contribution when made is implicit. Otherwise, the ability of the member to withdraw its contribution would make the obligation to make the contribution meaningless. Thus, the statute necessarily means that withdrawal of the contribution (without consent of the other members) is no different than failing

6

to make the contribution in the first place**.**  As this Court reads the statute, then, it bars a member from enforcing both the obligations to make a contribution and the obligation not to withdraw the contribution once made.

### ii. BEI's Standing to Sue under the "Amended" Operating Agreement

BEI also alleges that the Missouri Secretary of State has dissolved SEMO and that SEMO's successors in interest have not become members of Bootheel LLC, thus leaving BEI as the sole member.  As the sole member, BEI argues that it has the ability to unilaterally amend the operating agreement and that it has done so.  In particular, BEI added sec. 6.5 to the operating agreement, contemporaneously with the Amended Complaint, establishing a "Right to Sue" that would presumably allow BEI to establish a cause of action against SEMO.  The section states in full:

> 6.5 **Right to Sue**.  Any Member who loans any funds to the Company pursuant to Section 6.2 of this Operating Agreement, shall have the right to enforce (a) the other Member's obligation to make capital contributions stated in Section 6.1, and (b) the prohibition on any Member withdrawing its capital contributions as stated in Section 6.5.  The Member who has made such loans has the right to bring a lawsuit in its own name against any Member who fails to make its Section 6.1 capital contributions or who withdraws previously-made capital contributions in violation of Section 6.4, but only to the extent necessary to enable the Member to recoup the amount of its loans, plus interest and the costs of collection, including its reasonable attorneys' fees.

If this new section 6.5 was validly enacted, then it would take the statutory prohibition of sec. 347.099.3 out of play and authorize BEI to bring suit to enforce SEMO's obligation to make a capital contribution.

However, despite plaintiff's argument, if it were true that BEI was the sole member and could unilaterally amend the operating agreement, then giving one member the "Right to Sue" another "member" would be logically inconsistent.  Plaintiff is either the sole member and cannot

subject another "member" to suit, as there is no other member, or plaintiff is not the only member, and therefore cannot amend the operating agreement without the approval of other members. Consequently, BEI still has not established standing to sue SEMO by the attempted amendment of the operating agreement.

### iii. BEI's Standing to Sue in View of the "Oral Agreement" of Mr. Adcock

Plaintiff BEI next alleges that it made an oral agreement with a Mr. Adcock, operations manager for Bootheel LLC, at an unknown date, to alter the terms of repayment of BEI's loan. Under this agreement, the BEI loan would be "due and payable" not only when Bootheel was terminated as an entity, as expressly provided in sec. 6.2.3 of the Operating Agreement, but also, in the alternative, when Bootheel ceased active efforts to build the ethanol production facility, an occasion that has now occurred. The significance of the alleged oral agreement is that the specific remedy available to BEI that this court identified in its original order – damages for breach of contract against SEMO that resulted from Bootheel's failure to repay BEI's $1,276,000 loan[4] – was not then ripe for adjudication because Bootheel had not been terminated and the loan had not become due and payable. If, however, the loan is now due and payable simply because Bootheel has ceased efforts to build the ethanol facility, the action, in theory, is now ripe.

The validity of this oral agreement, BEI contends, is based on the language of sec. 6.2.3, which states in pertinent part:

> *Unless otherwise agreed by the Operating Manager and the lending party*, all such loans (i) shall be payable only from the assets of the Company without any recourse against or any right of contribution from any Member; ... and (iii) each such loan shall mature and be due and payable to the extent not paid and

---

[4]In the original order, the Court inadvertently identified BEI as SEMO in holding that "[t]he specific remedy sought by SEMO – damages for failure to repay SEMO's $1,276,000 loan – is not ripe."

8

> payable to the extent not paid pursuant to other provisions of this Agreement upon the termination of the Company.
> (emphasis added)

Although these provisions prohibit "any recourse against or any right of contribution from any Member" and specify that the loans are due and payable "upon termination of the Company," the provisions are expressly qualified by the introductory phrase, "Unless otherwise agreed by the Operating Manager and the lending party. . ."  This qualification, then, is implicit authority for the Operating Manager and BEI to alter both the terms for recourse and right of contribution and for the maturity date.

However, this argument does not take into account sec. 9.5 of the Operating Agreement, cited by defendant SEMO, which prohibits the Operating Manager to act independently of the Operating Board in making "Major Decisions."   Section 9.5 states in pertinent part:

> 9.5.  **Major Decisions**.  Notwithstanding anything in this Article 9 to the contrary, the Operating Manager <u>shall not</u> enter into or make the following actions or decisions by, for or on behalf of the Company ("Major Decisions") without the unanimous approval of the Operating Board:
>
> . . .
>
> <u>8.0.0.2.</u>  Except as provided in an adopted annual budget, any borrowing by the Company and any pledge of any or all of the assets of the Company or the income therefrom to secure or provide for the repayment of any such borrowing, any replacement, refinancing, recasting, *material modification*, extension or consolidation of any such borrowing;
> (emphasis added)

In applying this provision, it is uncontested that the unanimous approval of the Operating Board was not obtained to alter the date on which the loan becomes due and payable, and it cannot be seriously argued that an agreement by the Operating Manager to do so is not a "material modification" to "borrowing by the Company," and hence a major decision.  Section 9.5, then,

9

appears to be in direct conflict with sec. 6.2.3 in that sec. 6.2.3 authorizes the Operating Manager to do the very thing that sec. 9.5 prohibits.

Faced with this conflict, or ambiguity, and in the absence of extrinsic evidence to resolve the ambiguity, this Court must resort to the well-established rules of contract construction. According to Missouri law the applicable rule is that general terms and provisions of a contract yield to specific ones, *State ex rel. Smith v. City of Springfield*, 375 S.W.2d 84 (Mo. 1964); said another way, where possible, the court reconciles provisions of written instruments that appear contradictory and gives preference to specific provisions over general provisions, *Phillips v. Authorized Investors Group, Inc.*, 625 S.W.2d 917 (Mo. App. 1981). In these instances, the specific clause is said to modify and pro tanto nullify the more general clause. *Tri-County Retreading, Inc. v. Bandag Inc.*, 851 S.W.2d 780 (Mo. App. 1993); *In re Marriage of Buchmiller*, 566 S.W.2d 256 (Mo. App. 1978).

In this case, sec. 9.5 applies to the full Operating Agreement in general, but sec. 6.2.3 applies only to the particular matter of member loans, and then only to two matters involving member loans: 1) the recourse or right of contribution from other members for repayment of the loans, and 2) the date on which the member loans become due and payable. Section 6.2.3 is thus a specific provision that trumps the general provision of sec. 9.5 on these particular matters of member loans.

It bears mention as well that this conclusion is bolstered by the fact that sec. 6.2.2, which immediately precedes sec. 6.2.3, expressly provides that the Operating Manager must obtain "consent of the Operating Board" before securing loans from outside, non-member sources. It follows that if the parties had intended for the Operating Manager to obtain consent of the Operating Board before altering loan agreements with members as provided in sec. 6.2.3, then

the parties would have included the same "consent of the Operating Board" provision in that section as well.

      To refute the Adcock agreement, SEMO also relies on sec. 10.2 of the Operating Agreement for the proposition that SEMO, as a member of Bootheel, cannot in any event be liable for the debts of Bootheel in general and for repayment of the loan to BEI in particular. Section 10.2 provides:

> 10.2. **Limited Liability** The debts, obligations and liabilities of the Company, whether arising in contract, tort, or otherwise, shall be solely the debts, obligations, and liabilities of the Company, and the Members shall not be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member of the Company. Also, *no Member, in its capacity as a Member of the Company, shall be responsible or liable for any indebtedness or obligation of any other Member*, nor, except to the extent provided in Section 10.6, shall the Company be responsible or liable for any indebtedness or obligation of any Member.
> (emphasis added)

This section, like sec. 9.5, also is in contravention of sec. 6.2.3 in that sec. 6.2.3 authorizes the Operating Manager and the lending member to alter the provisions respecting the lending member's recourse against and right of contribution from other members. Moreover, sec. 10.2 suffers from the same infirmity as sec. 9.5 in that both are general provisions that are subject to the specific provisions of sec. 6.2.3. Again, sec. 6.2.3 controls.

      For these reasons, and to the limited extent that plaintiff BEI's claim for breach of the operating agreement is predicated on an alleged oral agreement between the Operating Manager and BEI to alter the provisions of sec. 6.2.3 as they apply to BEI's loan, SEMO's motion to dismiss must be overruled. If BEI's allegations are true, then the claim for breach of the Operating Agreement became ripe when Bootheel ceased efforts to construct the planned ethanol plant.

## Fraudulent Conveyance (Count II)

In Count II, which is brought against the individual defendants only, plaintiff alleges that those defendants "withdrew SEMO's capital contributions from the escrow account and distributed the funds to SEMO's shareholders, including themselves. . ." and that they "engaged in this conduct with the intent that they would hinder, delay, or defraud [BEI] and Bootheel in their respective capacities as creditors of SEMO. . . ." Defendant SEMO's motion to dismiss on this count is based in large part on the same ground as that raised in Count I, which is that an individual shareholder like BEI does not have standing to recover corporate funds. In response, BEI first argues -- almost as an aside -- that its claim in Count II "sounds in 'money had and received' just as much as it does in fraudulent conveyance" and that "[m]oney had and received is based on equitable principles, and imposes an implied contract of repayment upon someone who obtains money belonging to another." However, the parties here have an express contract, the Operating Agreement. Where there already exists an express contract, an implied contract is unnecessary, and the doctrine of money had and received does not apply. *A&L Underground, Inc. v. Leigh Const., Inc.*, 162 S.W.3d 509, 511 (Mo. App. 2005).

Regarding the standing issue, BEI then responds that "[BEI] is not suing in its capacity as a member of a company whose funds were fraudulenty conveyed. Instead, [BEI] is suing in its capacity as a party to a contract and in its capacity as a creditor." BEI then explains that "[BEI] individually is a creditor of Bootheel and, by virtue of its status as a creditor beneficiary, of SEMO as well." As this Court has held, however, BEI has no standing as a creditor of SEMO under the original Operating Agreement, nor is BEI a third party, or creditor beneficiary, of SEMO, under the Escrow Agreement, which is the only context in which the third party creditor beneficiary claim was raised.

The question remains, though, whether BEI has standing to pursue the fraud claim in view of the alleged oral agreement between Adcock and BEI which accelerated the maturity date of BEI's loan and made its claim ripe. BEI's standing to bring the fraud claim, as we understand the parties' arguments, must be based on BEI's standing to bring the underlying breach of contract action. Again, this is not a claim for breach of contract brought on behalf of Bootheel, nor is it a claim for breach of contract seeking enforcement of the obligation of SEMO to pay its capital contribution, it is instead a claim for breach of contract that seeks a different remedy -- the damages to BEI resulting from Bootheel's inability to repay BEI's loan. In any event, having determined that the contract claim in that limited context is now ripe and that BEI has standing to bring the claim, so too does it have standing to bring the fraud claim.

The parties also spar on the question of whether BEI is a "creditor" as that term is defined under the Missouri Uniform Fraud Transfers Act, sec. 428.005 RSMo 2004 et seq., which, under sec. 428.024.1 makes it unlawful for a debtor to transfer assets with intent to defraud a creditor. It is unclear whether BEI is bringing its fraudulent conveyance claim under the MUFTA, or under the common law, or both. But to the extent that the fraudulent conveyance claim is brought under the MUFTA, SEMO challenges BEI's status as a creditor of the debtor. A "creditor" is defined simply as "a person who has a claim", sec. 428.009 (4), and a "claim" is defined as "a right to a payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingtent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured," sec. 428.009 (3). Again in view of the alleged oral agreement between Adcock and BEI, BEI is a creditor that has a claim against SEMO for breach of the Operating Agreement.

All that said, however, this Court observes that the debtor here is defendant SEMO, rather than the individual defendants, and that the actionable language in the MUFTA is directed at fraudulent transfers by debtors, rather than those who may have facilitated those transfers on behalf on the debtors. It appears, then, that because the individual defendants are not debtors, there can be no cause of action against them under the MUFTA. This issue, though, was not addressed by the parties, and therefore this Court will allow each party 28 days from the date of this order, Thursday, January 7, 2010, to submit additional briefing.

## Conclusion

For the foregoing reasons, defendants' motion to dismiss (#33) is granted in part and denied in part and held in abeyance in part as follows:

1. As to Count I, the motion is granted insofar as plaintiff purports to allege breach of contract of the Escrow Agreement, breach of contract under the original Operating Agreement, and breach of contract under the purported amended Operating Agreement; the motion is denied insofar as it alleges breach of contract in view of the purported oral agreement with Mr. Adcock.

2. As to Count II, the motion is granted insofar as plaintiff purports to allege a claim for money had and received; the motion is denied insofar as it alleges common law fraud, and the motion is held in abeyance insofar as plaintiff purports to allege an action under the Missouri Uniform Fraudulent Transfers Act. Further, the parties are granted until Thursday, January 7, 2010, to submit additional briefing on the MUFTA claim.

So ordered this __10th__ day of December, 2009.

_____
UNITED STATES DISTRICT JUDGE